# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LUETISHIA ANNE WILDER**                                      **PLAINTIFF**

**V.**                      **CASE NO. 4:25-CV-00181 BSM-JTK**

**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.**    **Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.**    **Introduction:**

Plaintiff, Luetishia Anne Wilder ("Wilder"), filed an application for Title II disability and disability insurance benefits on June 1, 2022 (Tr. at 13). On the same day, she filed an application for Title XVI supplemental security income. *Id*. In the

1

applications, she alleged that her disability began on May 24, 2022. *Id*. The applications were denied initially and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") found that Wilder was not disabled. (Tr. at 13-27). The Appeals Council denied Wilder's request for review of the hearing decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Wilder has requested judicial review. For the reasons stated below, the Court should reverse the decision of the Commissioner.

### III. The Commissioner's Decision:

Wilder meets the insured status requirements of the Social Security Act through December 31, 2027. (Tr. at 15). The ALJ determined that Wilder has not engaged in substantial gainful activity since the alleged onset date of May 24, 2022.[1] *Id*.

The ALJ found, at Step Two, that Wilder has the following severe

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

impairments: cervical and lumbar degenerative disc disease, cardiomegaly, hypertension, asthma, degenerative joint disease of the right shoulder, morbid obesity, sleep apnea, degenerative joint disease of the knees, osteoarthritis, fibromyalgia, and lupus. *Id.*

The ALJ determined that Wilder did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[2] (Tr. at 18-19). Next, the ALJ found that Wilder had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) can never climb ladders, ropes, or scaffolds; (2) no more than occasional climbing of ramps and stairs; (3) no more than occasional stooping, crouching, kneeling, and crawling; (4) must avoid concentrated exposure to excessive vibration, bright sunlight, unprotected heights, and hazardous machinery; (5) no more than occasional overhead reaching with the right arm and no more than frequent overhead reaching with the left arm; and (6) no more than occasional exposure to irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. (Tr. at 19). Notably, the ALJ assessed no mental RFC restrictions.

The ALJ determined that Wilder was unable to perform any past relevant

---

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

work. (Tr. at 25). Relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Wilder's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Wilder could perform, such as router and ticketer. (Tr. at 25-27). Therefore, the ALJ concluded that Wilder was not disabled. *Id*.

## IV.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of

administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.   Wilder's Arguments on Appeal

Wilder contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ erred by not including mental functional restrictions in the RFC; (2) the physical RFC did not account for all of Wilder's limitations; (3) the ALJ failed to properly evaluate Wilder's subjective complaints; and (4) the ALJ erred at Step Five. The Court finds support for Wilder's first argument.

5

Wilder suffered from lupus and had symptoms therefrom, such as chronic pain and fatigue. (Tr. at 19-24). She treated conservatively with multiple medications and occasional steroid injections. *Id*. In June 2022, she demonstrated normal gait and stance, with overall normal musculoskeletal findings. *Id*. Wilder's doctor noted, on January 17, 2023, that her symptoms of pain from lupus were stable. *Id*.

Wilder had a right rotator cuff tear, but range of motion was only mildly limited. *Id*. Wilder sought out medical care rather infrequently and seemed to have a positive response to conversative treatment. *Id*.

As for Wilder's obesity, doctors suggested improved diet and exercise, and she was not referred for any other aggressive treatment. *Id*.

Wilder alleges that depression caused problems in her daily life. Her PCP told her she needed to get some help for her depression. (Tr. at 54). She said that on some days she felt fatigued and felt like a failure, and she did not feel like she could properly meet her teen daughter's needs. (Tr. at 55). She said that her memory and concentration are failing, and that she feels her depression is at its worst when she is in a lot of pain. (Tr. at 56). She cries often around people. *Id*. She had to give up cooking and working in the yard, and she spends her days napping and watching TV. (Tr. at 62). She does not often socialize. Wilder tries to do light chores, but she has a home health aide come take care of laundry and shopping for 5 hours per week.

6

(Tr. at 68). The ALJ asked very few questions about depression at the hearing. Wilder's attorney elicited Wilder's testimony about that. (Tr. at 54-65).

1. RFC and mental limitations

While the ALJ did not find mental impairment so be severe at Step Two, he assessed Wilder with mild limitations in the following mental function areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself. (Tr. at 16-17). In discussion of the fourth functional area, the ALJ overstated that Wilder could perform a variety of daily activities, and he did not mention that Wilder had a home health aide come into her home. *Id*.

Two state-agency psychiatric experts found, at the initial and reconsideration levels of review, that Wilder did not have severe mental impairments. (Tr. at 79-81, 90-92). They noted that Wilder was diagnosed with depression in 2022. (Tr. at 79-81). Just like the ALJ, the experts determined that Wilder had mild limitations in the four functional areas. *Id*. The ALJ found these two opinions to be persuasive. (Tr. at 17).

Wilder asserts that, although the ALJ did not find depression to be a severe impairment at Step Two, he should have either included some mental restrictions in the RFC, or explained why he did not, or at least asked the VE about mental

7

limitation in his line of questioning at the hearing. While it is not required that an ALJ always incorporate mild functional limitations into the RFC verbatim, he must at least consider and discuss such findings at Step Four. Soc. Sec. Ruling 96-8p (ALJ must evaluate and discuss even non-severe impairments as he determines the claimant's functional capacity); *Berutti v. Saul*, 2021 WL 1499313, at *2 (W.D. Mo. Apr. 16, 2021). And when the ALJ finds a medical opinion assessing functional mental limitations to be persuasive, as he did here, he must give good reasons for not including mental limitations in the RFC. *Nebgen v. Kijakazi*, 2024 WL 1328184, at *2 (W.D. Mo. Mar. 28, 2024) ("Simply because a limitation proves mild does not render obsolete the requirement that the ALJ explain why . . . an otherwise persuasive medical opinion failed to impact the RFC").

In *Sandra Y. v. O'Malley*, an Eastern District of Missouri case, which was decided in just June of this year, the ALJ found depression to be non-severe, and found mild limitations in the four functional areas; but, he did not offer any explanation why he did not include mental limitations in the RFC. *Sandra Y. v. O'Malley*, 2025 WL 1568215, at *21-22 (E.D. Mo. June 3, 2025). The ALJ in that case used boilerplate language; "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the

degree of limitation the undersigned has found in [the] mental functional analysis." *Id*. That ALJ offered no further discussion of mental limitations, however. *Id*. The ALJ in the instant case used the same boilerplate language without further discussion or a "detailed assessment." (Tr. at 17).

The Court found that the boilerplate language, without a more fulsome discussion at Step Four, did not carry the ALJ's burden to properly assess the impact mental limitations have on the claimant's ability to function in a workplace. *Sandra Y.*, *supra* at 21. The Court reversed the ALJ's decision.

We have virtually the same fact pattern in this case (physical pain caused depression and the ALJ assessed mild mental function limitations). The ALJ: (1) hardly asked Wilder about depression at the hearing; (2) found the doctors' opinions assessing mild mental limitations to be persuasive; (3) did not question the VE about mental restrictions (Tr. at 70-72); and (4) did not meaningfully discuss his findings at Step Four.

Certainly, mild mental limitations do not mean a claimant cannot work in every instance. But this Court will not guess about how the limitations affected the RFC, because that is the province of the Commissioner. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (the ALJ bears the responsibility for determining the RFC).

An ALJ's failure to show his work frustrates judicial review, and such is the

case here. *Smajic v. Berryhill*, 2019 WL 183980 at *11-12 (E.D. Mo. Jan. 14, 2019). The ALJ did not provide sufficient discussion or reasoning for how depression symptoms may have impacted Wilder's RFC. Reversal is warranted.

### V.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to fully explain his findings at Step Four.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

IT IS SO ORDERED this 22nd day of August, 2025.

_____
UNITED STATES MAGISTRATE JUDGE